Thomas Paul Lovy
P.O. Box 1142
Londonderry, N.H. 03053-1142
Tel: (603) 425-8566
Email: thomaslovy@comcast.net

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Thomas Paul Lovy<br><br>      Plaintiff,<br><br>v.<br><br>VERIZON NEW ENGLAND INC.<br>Serve:    CT Corporation<br>         9 Capital Street<br>         Concord, NH 03301<br><br>COMMUNICATIONS WORKERS OF<br>AMERICA LOCAL 1400<br>Serve:    Don Trementozzi,<br>         Local 1400 President<br>         55 West Road<br>         Portsmouth, NH 03801<br><br>COMMUNICATIONS WORKERS<br>OF AMERICA, DISTRICT 1<br>Serve:    Christopher M. Shelton,<br>         District 1 Vice President<br>         80 Pine Street, 37th Floor<br>         New York, NY 10005<br><br>and<br><br>COMMUNICATIONS WORKERS<br>OF AMERICA<br>Serve:    Larry Cohen, CWA President<br>         501 3rd. Street, NW<br>         Washington, DC 2001<br><br>         Defendants. | CIVIL ACTION NO.<br><br>1:13-CV-417<br><br><br>VERIFIED COMPLAINT<br><br><br>JURY TRIAL DEMANDED |

1

1.     Plaintiff, Thomas Paul Lovy, Sui Juris, one of the people[1] of New Hampshire respectfully submits his Verified Complaint in this Court[2] of Record[3] against Verizon New England Inc. for Breach of Contract under a Collective Bargaining Agreement and Communications Workers of America AFL-CIO, Communications Workers of America AFL-CIO, District One and Communications Workers of America AFL-CIO, Local 1400 for Breach of Duty of Fair Representation alleges and says as follows:

## NATURE OF ACTION

2.     This is a hybrid action under Section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C § 185, arising from the wrongful conduct by the Defendants. Verizon New England Inc. improperly terminating Plaintiff based on the pretext of poor job performance. The evidence will show that Verizon New England Inc. retaliated against Plaintiff for reporting fraudulent sales practices by Verizon New England Inc. employees, taking Family Medical Leave and Short Term

---

[1] "...at the Revolution, the sovereignty devolved on the people; and they are truly the sovereigns of the country, but they sovereigns without subjects...with none to govern but themselves....". CHISHOLM v. GEORGIA (US) 2 DALL 419, 454, 1 L Ed 440, 455 @DALL (1793) pp471-472.
"Sovereignty itself is, of course, not subject to law, for it is the author and source of law; but in our system, while sovereign powers are delegated to the agencies of government, sovereignty itself remains with the people, by whom and for whom all government exists and acts." Yick Wo v. Hopkins 118 U.S. 356; 6 S.Ct. 1064 (1886)

[2] COURT. An agency of the sovereign created by it directly or indirectly under its authority, consisting of one or more officers, established and maintained for the purpose of hearing and determining issues of law and fact regarding legal rights and alleged violations thereof, and of applying the sanctions of the law, authorized to exercise its powers in the course of law at times and places previously determined by lawful authority. [Isbill v. Stovall, Tex.Civ.App., 92 S.W.2d 1067, 1070; Black's Law Dictionary, 4th Edition, page 425]

[3] A "court of record" is a judicial tribunal having attributes and exercising functions independently of the person of the magistrate generally to hold it, and preceding according to the course of common law, its acts and proceedings being enrolled for a perpetual memorial. Jones v. Jones 188 Mo. App. 220, 175 S.W. 227, 229: Ex parte Gladhill, 8 Metc. , Mass., 171, per Shaw, C.J. See, also, Ledwith v. Rosalsky, 244 N.Y. 406, 155 N.E. 688, 689 - Black's 4th pg426

Disability leave. The Union, in turn compounded Verizon New England Inc.'s decision by wholly failing to fairly represent Plaintiff in challenging his termination through the grievance process set forth in the Collective Bargaining Agreement between the Company and the Union. Indeed, far from providing Plaintiff with fair representation, the Union essentially "surrendered" his claim without a fight and refused to pursue Plaintiff's grievance through arbitration, as contemplated under the CBA. The Union's decision was arbitrary, discriminatory, and in bad faith because Plaintiff's grievance had substantial merit and would have been successful. Plaintiff vehemently objected to the Union's "surrender" decision and appealed it internally all the way through to the CWA Executive Board, all to no avail. Plaintiff having exhausted his internal appeals procedures now brings this action to hold each of these defendants liable for their acts of wrongdoing.

## PARTIES

3.    Thomas Paul Lovy (hereinafter "Plaintiff" or "Mr. Lovy") is domiciled in Londonderry, New Hampshire.

4.    Defendant Verizon New England Inc. (hereinafter "VNE" or "Company") is a New York corporation with its principal place of business at 185 Franklin Street, Boston, Massachusetts 02110.

5.    Defendant Communications Workers of America AFL-CIO, principal place of business is 501 Third Street, N.W., Washington, D.C. 20001-2797.

6. Defendant Communications Workers of America AFL-CIO, District One's principal place of business is 80 Pine Street, 37th Floor, New York, New York 10005.

7. Defendant Communications Workers of America AFL-CIO, Local 1400's principal place of business is 155 West Road, Portsmouth, New Hampshire 03801.

8. Communications Workers of America AFL-CIO, Communications Workers of America AFL-CIO, District One and Communications Workers of America AFL-CIO, Local 1400 hereinafter referred to collectively as "CWA" or "Union".

## JURISDICTION AND VENUE

9. This complaint asserts claims under both federal and state laws.

10. This court has subject matter jurisdiction under 28 U.S.C. § 1332 and the amount in controversy exceeds the jurisdictional minimum of this Court.

11. This court also has subject matter jurisdiction under 28 U.S.C. § 1331, and the Supremacy Clause, U.S. Const. art. VI, cl. 2.

12. This Court has jurisdiction over the FMLA, ADA, and Title VII claims pursuant to 29 U.S.C. § 2617 (29 CFR Part 825.400(a) (2)), 42 U.S.C. § 200e-5.

13. Venue is proper in this court of record because Plaintiff lives within the District in Londonderry, New Hampshire, has sustained and continues to sustain damage within this District due to Defendants' actions.

14.    Venue in this District is proper under 28 U.S.C. §1391(b)(1) because the Defendant CWA Local 1400 resides in this District.

15.    Venue is proper under § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this District, in which CWA Local 1400 sits.

## FACTUAL ALLEGATIONS
### ALL DEFENDANTS

16.    At all times relevant to the allegations contained herein, Mr. Lovy was employed by VNE as a customer service representative at its Andover CSSC office at Andover, Massachusetts.

17.    Mr. Lovy's employment with VNE began in July 2000.

18.    Mr. Lovy is a member of the Union.

19.    Company and Union are signatory to their initial collective bargaining agreement, hereafter referred to as the "Agreement" or "CBA."

20.    At all relevant times, Plaintiff was a member of a bargaining unit of VNE employees and subject to a CBA that became effective as of August 3, 2008, and shall remain in effect up to and including August 6, 2011.

21.    Section 1.01 of the CBA states, "The Company hereby recognizes the Union as the sole and exclusive collective bargaining representatives for the purpose of collective bargaining with respect to rates of pay, wages, hours of employment, and other conditions of employment, for all of its employees in the collective bargaining units certified by the National Labor Relations Board in Case Numbers 1-RC-20146 and 1-RC-16,970 and all its bargained-for employees in the

5

New Hampshire Business Service Centers in New Hampshire who are in the job titles of: Service Representative, Office Assistant, Administrative Assistant and Special Assistant."

22. At all relevant times to the allegations contained herein, during the course of Plaintiff's employment with VNE, the Union served as Plaintiff's bargaining representative.

## FACTUAL ALLEGATIONS
### VERIZON NEW ENGLAND INC.

23. On information and belief, VNE is and has been engaged in industry that affects commerce within the meaning of the National Labor Relations Act.

24. On information and belief, Defendant VNE is a corporation duly authorized to conduct, and regularly conducts business in the State of New Hampshire.

25. Mr. Lovy was employed by VNE to perform customer service representative work located in Andover, Massachusetts.

26. At all relevant times to this complaint, Mr. Lovy was an employee as defined by the Federal Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA"), and Title VII.

27. Mr. Lovy earned exemplary job performance reviews, only three were done ending in 2003, including a certificate of appreciation for ten years of service to VNE.

28. No formal reviews of Plaintiff were done in the years 2004 – 2011.

29. Mrs. Vatey Sumananatilleke was Mr. Lovy's Supervisor.

6

30. Mr. Lovy reported fraudulent sales practices by VNE sales employees to Mrs. Sumananatilleke.

31. Examples of the fraudulent sales practices reported included: quoting one price for service then customers get billed at a higher price; charging customers an activation fee, after being told by the salesperson the fee would be waive; charging customers for services such as movie packages, that were never ordered.

32. Mrs. Sumananatilleke told Mr. Lovy the fraudulent sales practices he reported were not his concern.

33. On information and belief, Mrs. Sumananatilleke did not investigate Mr. Lovy's claim of fraudulent sales practices he reported.

34. On or about Monday, April 25, 2011 at 10:30 a.m., Mrs. Sumananatilleke called Mr. Lovy to her office for a meeting.

35. Mrs. Sumananatilleke was upset because she was just informed by her manager that her team had the lowest sales numbers and something had to be done or she would be riffed.

36. At the end of the meeting Mr. Lovy informed Mrs. Sumananatilleke that he intended to take FMLA leave because of his serious health condition.

37. When Mrs. Sumananatilleke heard Mr. Lovy was going to take FMLA leave wanted Mr. Lovy out of her unit.

38. Mrs. Sumananatilleke, knowing that an employee out on medical leave is still considered in her head count for her teams sales objective, tried to pressure Mr. Lovy to transfer out of her unit.

39.     Mrs. Sumananatilleke pressured Mr. Lovy to go on the night shift or supervisor's assistance rotation to get him out of her head count.

40.     Mr. Lovy informed Mrs. Sumananatilleke that he had no intentions of transferring to the night shift or the supervisor's assistance rotation.

41.     When Mr. Lovy refused Mrs. Sumananatilleke again that he had no intention of leaving her unit, Mrs. Sumananatilleke threatened to terminate him.

42.     Around the same time Mr. Lovy reported fraudulent sales practices of VNE sales employees, his supervisor trying to pressure him out of her unit and then threatening his job when he refused, Mr. Lovy applied for FMLA leave.

43.     Mr. Lovy applied for and was approved for FMLA leave for his serious health condition.

44.     Mr. Lovy went on approved FMLA leave from May 3, 2011 through May 8, 2011.

45.     Mr. Lovy applied for and was approved for Short Term Disability leave for his serious health condition.

46.     Mr. Lovy went on approved short term disability leave from May 9, 2011 through May 30, 2011.

47.     On Tuesday May 31 2011, Mr. Lovy returned to work from short term disability leave and worked 10:00 a.m. – 6:00 p.m.

48.     On Wednesday June 01, 2011, Mr. Lovy took FMLA leave.

49.     On Thursday June 02, 2011, Mr. Lovy worked 8:30 a.m. – 5:30 p.m.

50.     On Friday June 03, 2011, Mr. Lovy took FMLA leave.

51.     On the morning of Monday June 6, 2011, Mrs. Sumananatilleke and Union steward Rhonda Anderson informed Mr. Lovy that he was suspended for thirty days.

52.     On Monday June 06, 2011, Mr. Lovy was suspended for 30 days.

53.     Mr. Lovy was asked to leave the building on June 6, 2011 and not to return until after his suspension.

54.     In a letter dated July 11, 2011 from Denis Sheehan, Director – New England of Consumer Sales and Service for VNE to Plaintiff states: "This letter is to notify you of your termination of employment with Verizon effective June 7, 2011. Your termination is the result of your failure to meet job performance requirements." On Thursday June 07, 2011, Mr. Lovy was terminated.

55.     Rather than investigate the fraudulent sales practices by VNE employees reported by Mr. Lovy and not wanting to deal with Mr. Lovy's ongoing health concerns, VNE retaliated against him by wrongfully terminating him without just cause.

## FACTUAL ALLEGATIONS
### CWA

56.     Communications Workers of America, AFL-CIO is an unincorporated association and labor organization headquartered in Washington, D.C. CWA represents employees engaged in interstate commerce for purposes of collective bargaining with the meaning of Section 3(I) and (j) of the LMRDA, 29 U.S.C. § 403(I) and (j); Section 501 of the LMRA, 29 U.S.C. § 189; and Section 301 of the LMRA, 29 U.S.C. § 185.

57. On information and belief, Communications Workers of America AFL-CIO, Local 1400 is a labor organization within the meaning of the National Labor Relations Act representing employees in an industry affecting commerce within the meaning of 29 U.S.C. §§ 402(i) and (j) and 29 U.S.C. §§ 152 (6) and (7). It is a subordinate body of the Communications Workers of America union. Local 1400 represent employees of Verizon New England Inc. and other employers, who live in the Commonwealth of Massachusetts, and the States of Maine, New Hampshire and Vermont.

58. On information and belief, Communications Workers of America AFL-CIO, District One is a labor organization within the meaning of the National Labor Relations Act.

59. On information and belief, Communications Workers of America AFL-CIO, is a labor organization within the meaning of the National Labor Relations Act.

60. On information and belief, CWA conducts business in the State of New Hampshire.

61. The relationship between CWA and its affiliated local unions is governed by the CWA Constitution. The CWA Constitution is a contract between CWA and its affiliated local unions, and is a contract between labor organizations representing employees in an industry affecting commerce within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185

62. Plaintiff is a member of the Union.

63. The Union is the bargaining representative of the peoples employed by Verizon New England Inc.

64. At all relevant times to the allegations contained herein, during the course of Plaintiff's employment with VNE, CWA served as Plaintiff's bargaining representative.

65. The CBA provides that an employee may only be terminated for just cause, and in the event of such a termination, the CWA may file, on behalf of the aggrieved employee, a grievance leading up to arbitration.

66. Plaintiff was wrongfully terminated on June 7, 2011.

67. Plaintiff, a long-standing member of the union, invoked his right to a grievance and was represented by the CWA.

68. The grievance proceeded to the third step in the process, and the CWA claimed in filing for grievance, that VNE's disciplinary action against Plaintiff was without just cause.

69. CWA unreasonably and without justification, arbitrarily, capriciously and in bad faith, refused to proceed with Plaintiff's request for arbitration.

70. Plaintiff internally appealed the decision through the CWA's internal process, which rubber stamped the denial of Plaintiff's request for arbitration, culminating in an August 21, 2013 decision wherein the CWA Executive Board denied Plaintiff's appeal.

71. VNE wrongfully terminated Plaintiff without just cause.

72.     CWA acted in an arbitrary manner and in bad faith in refusing to process Plaintiff's grievance to arbitration.

73.     VNE used failure to meet job performance requirements as a mere pretext for terminating Plaintiff's employment.

74.     CWA filed a wrongful termination without just cause grievance on Plaintiff's behalf.

75.     Plaintiff was never notified of the first step grievance hearing.

76.     Plaintiff does not know if a first step grievance hearing to place.

77.     Plaintiff was never notified of the second step grievance hearing.

78.     Plaintiff does not know if a second step grievance hearing took place.

79.     On June 11, 2012 Executive Vice President Keri Evinson called to inform Plaintiff of his upcoming third step grievance hearing.

80.     Plaintiff informed Executive Vice President Keri Evinson he would attend the third step grievance meeting with her.

81.     The third step grievance hearing was scheduled for June 20, 2012 at 10:00 a.m. at 125 High Street, Boston, Massachusetts.

82.     Plaintiff and Executive Vice President Keri Evinson agreed to meet in the lobby and walk up to the meeting together.

83.     Executive Vice President Keri Evinson did not show up for the third step grievance meeting on June 20, 2012.

84.     Executive Vice President Keri Evinson did not return Plaintiff's calls regarding the third step grievance meeting scheduled for June 20, 2012.

85. On information and belief Plaintiff does not believe a third step grievance meeting was ever scheduled on June 20, 2012.

86. After not hearing from Executive Vice President Keri Evinson, Plaintiff sent a letter dated July 19, 2012 by U.S. Postal Service certified mail number 7012 0470 0000 1245 8751 to CWA Local 1400 Grievance Committee making a formal complaint and requested a formal inquiry into the third step grievance meeting. To date, Plaintiff has not heard from the grievance committee regarding if a third step meeting was every scheduled for June 20, 2012.

87. A third step grievance meeting was finally scheduled for October 17, 2012.

88. At the end of the third step grievance meeting on October 17, 2012, Plaintiff was told a decision would be rendered within ten (10) days.

89. Plaintiff called CWA Local 1400 on November 1, 2012 to find out the status of his third step grievance.

90. CWA Local 1400 did not have an answer for Plaintiff's third step grievance on November 1, 2012.

91. Plaintiff called CWA Local 1400 again on or about November 15, November 30 and December 20, 2012 to find out the status of his third step grievance.

92. Each time Plaintiff called, CWA Local 1400 gave the same answer. We don't have an answer yet. We don't want to push the issue because Verizon will just deny the grievance. We will call you when we get an answer.

93.     Plaintiff questioned why a decision that was to be rendered in ten days was now going on forty five days.

94.     Executive Vice President Keri Evinson told Plaintiff that the delay was due to the fact that the person in charge of the third step grievance has retired due to her husband's health issues.

95.     Plaintiff called CWA Local 1400 on January 04, 2013 and was told no decision as to the status of his third step grievance.

96.     Later, on January 04, 2013 Executive Vice President Keri Evinson called Plaintiff informing him that his third step grievance was denied.

97.     Executive Vice President Keri Evinson informed Plaintiff that she received notification of the denial on December 28, 2012.

98.     Plaintiff asked why the delay in notifying him of the results of the third step grievance and Executive Vice President Keri Evinson did not have an answer.

99.     Executive Vice President Keri Evinson told Plaintiff he would receive a formal letter from CWA Local 1400 about the results of his third step grievance in a few days.

100.    Plaintiff asked Executive Vice President Keri Evinson about the arbitration process but she was very vague in her explanation just saying it is up to the lawyers now.

101.    Executive Vice President Keri Evinson explanation did not sit well with Plaintiff and he emailed CWA's District One Vice President Chris Shelton on

January 21, 2013. In Plaintiff's email to Mr. Shelton, Plaintiff asked, "Who is the person I need to speak to about my grievance going to arbitration."

102.    Mr. Shelton forwarded Plaintiff's email to CWA Staff Representative Paul Bouchard.

103.    On January 22, 2013 Mr. Bouchard emailed Plaintiff indicating he was the person who decides whether to recommend that a particular grievance be arbitrated. "However, I do this after the local indicates that it wants a grievance to be arbitrated. I am not aware of any grievance filed on your behalf that Local 1400 has asked to be arbitrated. I will look into this further tomorrow." Mr. Bouchard's email dated January 25, 2013 states, "I have checked with Local 1400 and the local's grievance has not met at this point to decide whether or not to request arbitration on any of the grievances." Executive Vice President Keri Evinson told a half-truth back on January 24, 2013 when she told Plaintiff it was up to the lawyers now regarding his grievance going to arbitration.

104.    Executive Vice President Keri Evinson failed to tell Plaintiff that Local 1400 has to request arbitration from CWA District One.

105.    Plaintiff emailed CWA Local 1400 Grievance Committee on January 25, 2013 asking if his grievance is going to be recommended for arbitration. Plaintiff never received a reply from his January 25, 2013 email to CWA Local 1400 Grievance Committee.

106.    Plaintiff called CWA Local 1400 on February 04, 2013 and spoke to Executive Vice President Keri Evinson.

107. Executive Vice President Keri Evinson told Plaintiff she just sent Mr. Bouchard a request to arbitration on his behalf on February 04, 2013. When Plaintiff asked Executive Vice President Keri Evinson why she did not sent the request to arbitrate back on January 04, 2013 when she told Plaintiff it is up to the lawyers, she did not have an answer.

108. Plaintiff also told Executive Vice President Keri Evinson that he did not receive the formal letter as per there January 04, 2013 conversation.

109. Executive Vice President Keri Evinson told Plaintiff she would send him out a copy of the letter.

110. On February 04, 2013 Plaintiff emailed Mr. Bouchard that Executive Vice President Keri Evinson sent Mr. Bouchard a request to arbitration Plaintiff's grievance.

111. Plaintiff also included in his February 04, 2013 email a request to be apprised of the arbitration process, his telephone number and asked Mr. Bouchard to contract Plaintiff if he had any questions or concerns.

112. Mr. Bouchard emailed Plaintiff dated February 04, 2013 that "I will be looking at your file this week and will keep you informed. Thanks for the contact information." On February 06, 2013 Plaintiff received two formal letters from CWA Local 1400 denying third step grievance. Both formal letters were originals.

113. The only difference between the two formal letters are the dates at the top of the letters.

114. One formal letter is dated Jan 11, 2013 and the other formal letter is dated Feb 04, 2013.

115. On information and belief Plaintiff does not believe a formal letter was mailed to him on January 11, 2013.

116. On February 15, 2013 Plaintiff emailed Mr. Bouchard expressing his concern about the validity of the sixty days after notice of third step grievance to file for arbitration. On February 15, 2013 Plaintiff called Paul Bouchard's office requesting Mr. Bouchard to call Plaintiff back.

117. On February 15, 2013 Plaintiff called Mr. Bouchard's office telephone and left a voice message for him to call Plaintiff.

118. On February 18, 2013 Plaintiff called Mr. Bouchard's office telephone and left a voice message for him to call Plaintiff.

119. On February 19, 2013 Plaintiff called CWA District One office giving the receptionist his contact information and requested that Mr. Bouchard call Plaintiff back.

120. On February 20, 2013 Plaintiff called Mr. Bouchard's office telephone and left a voice message for him to call Plaintiff.

121. Mr. Bouchard never returned any of Plaintiff's calls.

122. On February 21, 2013 Mr. Bouchard emailed Plaintiff, "The grievances for your suspension and your termination were protected for arbitration on January 7, 2013. I have Local 1400's request for arbitration and have requested your grievance files from the local." On February 21, 2013 Plaintiff emailed Mr.

Bouchard, "I am a little confused from your last email which states you have requested my file from the local. Yet, 17 days ago you emailed me that you were going to be looking at my file the week of February 4th. Am I to understand you haven't reviewed my file because you don't have it? Would you please contact me to clarify. On February 21, 2013 Mr. Bouchard emailed Mr. Lovey [sic], "I didn't receive your file so there was no way I could look at it. The local is working on getting it to me now. When I receive it, I will look at it and make a determination on whether to recommend you case for arbitration. I will let you know what the decision is at that time." On February 28, 2013 Plaintiff emailed Executive Vice President Keri Evinson, "I got an email last week from CWA District 1's Paul Bouchard saying he requested a copy of my grievance file. I would like a copy of my grievance file as well. Please send me a copy to my home address below." On February 28, 2013 Executive Vice President Keri Evinson emailed Plaintiff, "The grievance files become the property of the Union and we do not release our records. I am sorry I am not able to accommodate your request." On March 21, 2013 Plaintiff emailed Mr. Bouchard, "It has been a month now since our last email. I hope by now you have and are reviewing my file sent over by local 1400. In reviewing my file you might have a question I can answer or answer questions you might have after reviewing my file. If you have any questions please contact me. As always keep me informed." Mr. Bouchard never responded to Plaintiff's March 21, 2013 email.

123.    On March 26, 2013 Plaintiff received a letter from Mr. Bouchard dated March 22, 2013. The letter states that "After reviewing your above-referenced

grievances, I feel it is highly unlikely that an arbitrator would overturn you [sic] suspensions and termination and rule that the Company acted without just cause.

Given that, I have concluded that they should not be pursued past the 3rd Step of the grievance procedure. Therefore, they will not be recommended for arbitration.

That being the case, the Union plans no further action on your behalf in this matter. Attached you will find a copy of the Company's answer for your records.

If you disagree with this decision, you do have the right to file an internal Union appeal within fifteen (15) days from the date of this letter in <u>writing</u> to:"

Debora Hayes, Upstate Area Director<br>
CWA DISTRICT ONE<br>
821 Elk Street, Suite B<br>
Buffalo, New York 14210-1711

124. Paul Bouchard had to have known about Plaintiff's grievances before January 22, 2013 because he wrote to Linda D. Casler, Director Labor Relations for Verizon regarding Verizon's position on Plaintiff's grievances before December 28, 2012.

125. Paul Bouchard had to have known about Plaintiff's grievances before January 22, 2013 because of the Company's answer was dated December 28, 2012 and received on January 7, 2013.

126. Paul Bouchard was not honest in his January 23, 2013 email to Plaintiff when he said he didn't know about any of Plaintiff's grievances.

127. On March 28, 2013 Plaintiff filed his timely written internal Union appeal to Debora Hayes, Upstate Area Director for CWA District One. Plaintiff's

timely written internal Union appeal was sent March 28, 2013 via U.S. Postal Service Certified Mail Receipt Number 7012 1640 0002 5104 5006 and received on April 01, 2013.

128.  As of April 30, 2013 Plaintiff has not heard from Debora Hayes, Upstate Area Director for CWA District One regarding his timely written internal Union appeal.

129.  On May 2, 2013 Plaintiff called Debora Hayes' office but she was not in.

130.  Plaintiff inquired if a decision was made on his internal union appeal with the receptionist.

131.  The receptionist told Plaintiff that they just got his file from the Local.

132.  Plaintiff asked, "It took a month to get my file from the local?"

133.  The receptionist responded, "Well, it is a big file."

134.  Plaintiff left his contact information with the receptionist for Debora Hayes to return his call.

135.  Debora Hayes returned Plaintiff's call on May 3, 2013.

136.  Debora Hayes claims she just got Plaintiff's file and would be reviewing it on Monday May 6, 2013 and have a decision by Friday May 10, 2013.

137.  Plaintiff questioned Debora Hayes on why it took so long to get his file and she did not have an answer.

138.  Debora Hayes claims she did not know when Plaintiff's file was ordered.

139. Debora Hayes claims she did not know who ordered Plaintiff's file.

140. Debora Hayes did claim she would find out when and how Plaintiff's file was ordered.

141. Debora Hayes did not have an answer when Plaintiff asked her why her office just did not ask Paul Bouchard for a copy of Plaintiff's file.

142. Debora Hayes' letter dated 05/7/2013 denied arbitration.

143. Plaintiff appealed to Vice President Chris Shelton on 05/14/2013.

144. Chris Shelton's letter dated 05/24/2013 denied Plaintiff's appeal.

145. Plaintiff appealed to President Larry Cohen on 06/04/2013.

146. Larry Cohen's letter dated 07/03/2013 denied Plaintiff's appeal.

147. Plaintiff appealed to CWA's Executive Board on 07/19/2013.

148. CWA Executive Board Secretary – Treasurer Annie Hill letter dated 08/21/2013 stated: "This will advise that the CWA Executive Board has considered your appeal after which they adopted the following: **MOTION: Move that the appeal of member Thomas Lovy denied and the decision of President Cohen upheld.** You have now exhausted your internal appeals procedures and there is no further action to be taken.

## FIRST CAUSE OF ACTION
Breach of Contract
(Against Defendant Verizon New England Inc.)

149. All of the above Paragraphs of this Verified Complaint are hereby incorporated by reference as though fully set forth herein.

150. During the course of Plaintiff's employment with VNE, Plaintiff's bargaining representative, the Union was party to a CBA with VNE, which provided certain terms and conditions of employment governing certain VNE employees. As a member of the Union and employee of VNE at the Andover CSSC office at Andover, Massachusetts, Plaintiff's employment was covered by this CBA.

151. Article 24A, section 24A.01 of the CBA between the Union and VNE, states, "The Company has the sole right to discharge an employee for just cause, and the sole right to discipline the employee." Defendant VNE violated this position when it terminated Mr. Lovy.

152. On information and belief, Defendant VNE did not follow their own internal policies when they terminated Mr. Lovy.

153. On information and belief, Defendant VNE did not follow their Supervisor's Guide when they terminated Mr. Lovy.

154. By not following the Supervisor's Guide, Defendant VNE violated the CBA.

155. The violation of the CBA by VNE constitutes a breach of the CBA between VNE and the Union.

156. Plaintiff, as a VNE employee and Union member, was covered by the CBA, and therefore was an intended beneficiary of the CBA between VNE and the Union.

157. As an intended beneficiary of this CBA, Plaintiff has a right of action for breach of contract against VNE.

158.    As a direct result of VNE's breach of contract, Mr. Lovy was wrongfully terminated.

## SECOND CAUSE OF ACTION
Violation of the Americans with Disabilities Act
42 U.S.C. § 12101
(Against Defendant Verizon New England Inc.)

159.    All of the above Paragraphs of this Verified Complaint are hereby incorporated by reference as though fully set forth herein.

160.    VNE's employment of Mr. Lovy was subject to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA").

161.    It is a violation of the ADA for an employer to discriminate against a "qualified person with a disability."

162.    Mr. Lovy had the status of a qualified person with a disability under the ADA.

163.    Mr. Lovy had this status of a qualified person with a disability under ADA because his severe sleep apnea significantly impaired his ability to engage in major life activities, including but not limited to working, exercising, eating, lifting, managing stress, enduring stress, and concentrating. In addition, this condition impacted his major bodily functions, including his circulatory, nervous, respiratory, and immune systems.

164.    VNE took adverse actions against Mr. Lovy because of his status as a qualified person with a disability in violation of the ADA, including but not limited to:

a.    Getting reprimanded for taking frequent bathroom breaks because

Mr. Lovy's medication caused dry mouth requiring him to drink lots of water causing Mr. Lovy to use the bathroom more often.

b.     Getting reprimanded for getting up from his desk to stretch and walk around so Mr. Lovy would not fall asleep.

c.     The act of Vatey Sumananatilleke and other agents of VNE in terminating Mr. Lovy's employment.

165.   As a direct result of VNE's illegal actions, Mr. Lovy has suffered harm, injury, and damages.

## THIRD CAUSE OF ACTION
Americans with Disabilities Act
42 U.S.C. § 12101
Retaliation for Protected Activity
(Against Defendant Verizon New England Inc.)

166.   All of the above Paragraphs of this Verified Complaint are hereby incorporated by reference as though fully set forth herein.

167.   The act of Vatey Sumananatilleke and other agents of VNE in terminating Mr. Lovy's employment.

168.   As a result of VNE's illegal actions, Mr. Lovy has suffered harm, injury, and damages.

169.   Mr. Lovy engaged in activity protected by the ADA in requesting that he be permitted short term disability leave for sleep apnea and related sleep disorders.

24

170. After Mr. Lovy resumed employment and began to experience severe daytime fatigue from sleep apnea, Mr. Lovy engaged in protected activity by requesting and getting approved for FMLA leave.

171. VNE, by its agents, took illegal retaliatory actions against Mr. Lovy for exercising his protected rights under the ADA, as described above, including by:

    a.     The act of Mrs. Sumananatilleke , in expressing anger toward Mr. Lovy for stating he was going on FMLA leave and short term disability leave and not transferring out of her unit;

    b.     The act of Mrs. Sumananatilleke , in antagonizing Mr. Lovy for refusing to go on the night shift or supervisor assistance rotation;

    c.     The act of Mrs. Sumananatilleke, in unfairly holding Mr. Lovy responsible for his sales performance while he was on leave;

    d.     The act of VNE in terminating Mr. Lovy's employment.

172. As a direct result of VNE's illegal actions, Mr. Lovy suffered harm, injury, and damages.

## FOURTH CAUSE OF ACTION
Retaliation for Exercising Rights Afforded Under the FMLA
29 U.S.C. § 2615(a) (2)
(Against Defendant Verizon New England Inc.)

173. All of the above Paragraphs of this Verified Complaint are hereby incorporated by reference as though fully set forth herein.

174. VNE's conduct, as set forth above, constitutes violations of the FMLA, 29 U.S.C. § 2615(a) (2), and its attendant regulations.

175.   Mr. Lovy is a disabled employee and was, at all times relevant, more than 40 years old.

176.   VNE discriminated against Mr. Lovy and ultimately terminated him because of his disability.

177.   VNE's wrongful termination violated Federal and Massachusetts law and caused Mr. Lovy to suffer damages in excess of $75,000, the precise amount to be proved at trial.

178.   Mr. Lovy is entitled to all relief afforded by Massachusetts law.

### FIFTH CAUSE OF ACTION
Wrongful Termination in Violation of Public Policy
(Against Defendant Verizon New England Inc.)

179.   All of the above Paragraphs of this Verified Complaint are hereby incorporated by reference as though fully set forth herein.

180.   VNE's actions including retaliation against Mr. Lovy for reporting unconscionable sales practices, misrepresentation and knowing omission of material facts as stated above constitute the tort of wrongful termination in violation of the public policy of the State of New Hampshire.

181.   As a result of VNE's wrongful termination in violation of public policy, Mr. Lovy suffered damages in excess of $75,000, the precise amount to be proved at trial.

### SIXTH CAUSE OF ACTION
Discrimination on the Bases of Handicap
RSA 354-A:7
(Against Defendant Verizon New England Inc.)

182. All of the above Paragraphs of this Verified Complaint are hereby incorporated by reference as though fully set forth herein.

183. VNE's employment of Mr. Lovy was subject to RSA 354-A:7.

184. It is unlawful under RSA 354-A:7 for a covered employer to take materially adverse action against a "qualified handicapped person."

185. Mr. Lovy was a qualified handicapped person within the meaning of RSA 354-A:7 for the same reasons he was qualified person with a disability within the meaning of ADA, as set forth in the Second Cause of Action above.

186. VNE took adverse actions against Mr. Lovy, including those set forth in Second Cause of Action above, because of Mr. Lovy's status as a qualified handicapped person, in violation of RSA 354-A:7.

187. As a result of VNE's illegal actions, Mr. Lovy suffered harm, injury, and damages.

## SEVENTH CAUSE OF ACTION
### Punitive Damages
(Against Defendant Verizon New England Inc.)

188. All of the above Paragraphs of this Verified Complaint are hereby incorporated by reference as though fully set forth herein.

189. VNE's conduct in this matter was outrageous, including acts done with malice or bad motives.

190. VNE's conduct evidenced by reckless indifference to the interest of another person.

191. In order to punish and deter such wrongful conduct, VNE should be ordered to pay punitive damages in the amount to be proved at trial.

## EIGHTH CAUSE OF ACTION
### Breach of Duty of Fair Representation
### (Against Defendants CWA)

192. All of the above Paragraphs of this Verified Complaint are hereby incorporated by reference as though fully set forth herein.

193. Plaintiff alleges the defendant Union, in breach of its statutory duty of fair representation owed to plaintiff under the CBA, failed and refused to demand arbitration to challenge plaintiff's wrongful discharge, although there was no just cause or reason therefore, and that the defendant Union's refusal to arbitrate was carried out in a bad faith and perfunctory manner, for reasons which were arbitrary, dishonest and irrational. Further, defendant Union investigation of Plaintiff's grievance and right to arbitrate was handled in a perfunctory and disingenuous manner, in complete disregard of Plaintiff's contractual and statutory right not be discharged except for just cause. Despite knowledge and ample evidence of Verizon New England Inc.'s wrongfully and retaliatory actions against plaintiff, the defendant Union failed to conduct any type of meaningful investigation or challenge to Plaintiff's termination. Instead, defendant Union acquiesced in Plaintiff's discharge for its own secret ulterior motives in breach of its duty to fairly represent Plaintiff and ignored strong evidence to the contrary.

194. As a direct result of Plaintiff's wrongful discharge by Verizon New England Inc., in violation of his rights under the CBA, and in breach by defendant Union of its duty of fair representation owed to plaintiff, plaintiff has suffered, and will continue to suffer, grievous and extensive injuries, including past and future

wage loss, past and future fringe benefit loss, damage to his professional reputation and severe emotional distress. The amount of these damages is ongoing and is subject to proof at trial.

## DEMAND FOR JURY TRIAL

195.    Pursuant to rule 38(a) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues properly triable by a jury.

## LAW OF THE CASE

196.    The law of this case is further decreed:

a.      If any claim, statement, fact, or portion in this action is held inapplicable or not valid such decision does not affect the validity of other portion of this action.

b.      The singular includes the plural and the plural the singular.

c.      The present tense includes the past and future tenses; and the future the present, and the past the present.

d.      The rules adopted by this court are the Federal Rules of Civil Procedure (Fed. Rules Civ. P.), all case law, codes[4], statutes[5], etc. noted in the footnotes.

---

[4] United States Code does not prevail over Statutes at Large when the two are inconsistent. Stephen v. United States (1943) 319 US 423, 87 L Ed 1490, 63 S Ct 1135, Peart v The Motor Vessel Bering Exploreer (1974, DC Alaska) 373 F Supp 927.
[5] Statutes at Large are "legal evidence" of laws contained therein and are accepted as proof of those laws in any court of the United States. Bear v. United States (1985, DC Neb) 611 F Supp 589, affd (1987, CA8 Neb 810 F, 2d 153.

## RIGHT TO SUE AND NOT BE DISMISSED

197.   "Constitutional provisions for the security of person and property are to be liberally construed, and "it is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon."" Byars v. United States, 273 U.S. 28 (1927) "a pro se complaint, "however in artfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Estelle v. Gamble, 429 U.S. 97 (1976)

## RELIEF REQUESTED

198.   As a direct and proximate result of Defendant CWA violation of the duty of Fair Representation and disparity of treatment of Plaintiff, and Defendant VNE breach of contract and likewise disparity of treatment of Plaintiff, Plaintiff has sustained injuries and damages.

**WHEREFORE**, Thomas Paul Lovy Moves this Court to enter a judgment Order against Defendants providing relief:

a.      For a judgment declaring that Verizon New England Inc. has breached the collective bargaining agreement in terminating Thomas Paul Lovy and that CWA have breached their duty of fair representation;

b.      For a judgment awarding Thomas Paul Lovy compensatory damages as a result of Verizon New England Inc.'s breach of the collective bargaining agreement and CWA's breach of duty of fair representation

in whatever amount in excess of $250,000, exclusive of costs and interest, that Plaintiff is found to be entitled;

c.     For a judgment awarding Thomas Paul Lovy Punitive damages against Defendants' in excess of $300,000, exclusive of costs and interest, that Plaintiff is found to entitled;

d.     An award of all available damages, including actual, consequential, statutory, special and punitive damages, plus pre-judgment and post-judgment interest, in an amount to be proven at trial in excess of $300,000;

e.     An award for fees and costs;

f.     Such other relief, including equitable relief, as the Court may deem just and proper in the interest of justice under the circumstances.

Dated: September 20, 2013.

Respectfully submitted,

By: *Thomas Paul Lovy*
Thomas Paul Lovy, Sui Juris
P.O. Box 1142
Londonderry, New Hampshire 03053-1142
Tel: (603) 425-8566
Email: thomaslovy@comcast.net

# VERIFICATION

I, Thomas Paul Lovy, Sui Juris, hereby verify under penalty of perjury, under the laws of the United States of America, without the "United States"(federal government), that the above Verified Complaint is true and correct, according to the best of my current information, knowledge, and belief, so help me God, pursuant to 28 U.S.C. 1746(1)(Constitution, Laws and Treaties of the United States are supreme Law of the Land, notwithstanding anything in the Constitution or Laws of New Hampshire to the contrary).

Date September 20, 2013

By: *Thomas Paul Lovy*
Thomas Paul Lovy, Sui Juris
P.O. Box 1142
Londonderry, New Hampshire 03053-1142
Tel: (603) 425-8566
Email: thomaslovy@comcast.net